David J. HODGE

v.

TEXACO U.S.A., et al.

Civ. A. No. 89–2507–O.

United States District Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

May 29, 1991.

John S. Hodge, John C. Anderson, Brook, Morial, Cassibry, et al, Baton Rouge, La., for Hodge.

Patrick T. Caffery, Charles C. Garrison, Caffery, Oubre, et al, New Iberia, La.,

Charlene Suzanne Dittmer, Texaco, Inc., Legal Dept., New Orleans, La., for Texaco, Inc.

Joel E. Gooch, Nora M. Stelly, Allen, Gooch, Bourgeois, Breaux, Robison & Theunissen, Lafayette, La., Charles H. Hollis, Thomas P. Hubert, Kullman, Inman, et al, New Orleans, La., for Laboratory Specialists.

Joseph R. Ward, Jr., Ward & Clesi, New Orleans, La., for Consolidated American Ins. Co.

Don G. Holladay, Andrew, Davis, Legg, et al, Oklahoma City, Okl., for American Drug Screens Inc.

RULING

NAUMAN S. SCOTT, District Judge.

Before the court are Cross Motions for Summary Judgment filed by plaintiff David Hodge and defendants Texaco U.S.A. (Texaco), American Drug Screen, Inc. (ADS), Laboratory Specialists, Inc. (LSI), and Consolidated American Insurance Company (Consolidated).[1] ADS has also filed a Motion to Dismiss pursuant to rules 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure.

On September 29, 1987, plaintiff, a Texaco employee, signed a "Notification Form" wherein he acknowledged that he had read and understood Texaco's "Illegal/Unauthorized Substances and Materials Policy." Specifically, plaintiff indicated that he understood that "unannounced personal searches, and blood and urine drug screening tests" would be used as part of the program. Plaintiff also agreed to comply with the policy at all times and to cooperate in its enforcement.

At the end of his shift on November 1, 1988, plaintiff was advised by Texaco that he would have to undergo a drug test. Along with the other employees to be tested, plaintiff first signed a "roster" which stated: "We, the undersigned, at this time have voluntarily consented to a search of our persons and property, to rapid eye movement and pupil examinations, and if

---

1. Consolidated is LSI's insurer.

necessary to provide urine samples." The "Rapid Eye Test" was performed by Mobile Health Test Services (Mobile).[2] Plaintiff purportedly failed this test.

Because of his alleged failure, plaintiff was required to submit a urine sample for analysis. Plaintiff then signed a "Employee Consent and Release Form" wherein he consented to "urinalysis and/or blood screening tests," and agreed to "release and hold the treating physician, laboratory, and medical facility harmless for the release of this information to Texaco." Plaintiff also completed and signed a Chain of Custody Form bearing the letterhead and logo of defendant LSI. The Chain of Custody Form contained plaintiff's certification that "the urine and/or blood samples accompanying this form are my own." Mobile then collected his urine sample and transported it to LSI's laboratory in Belle Chase, Louisiana for chemical analysis.

Approximately three hours after plaintiff gave his urine sample to Mobile for analysis by LSI, plaintiff asked his private physician, Dr. Robert Lahasky, to take another urine sample for analysis. Dr. Lahasky sent this urine sample to Acadiana Medical Laboratory (AML) in Lafayette, Louisiana for analysis. Approximately one week later, plaintiff went back to Dr. Lahasky to give a second urine sample for analysis by AML.

Using the twenty nanograms per milliliter standard established by the Texaco drug testing policy, LSI's report stated that plaintiff tested positive for the use of marijuana, a controlled substance. However, using a one hundred nanograms per milliliter standard, AML's subsequent reports stated that plaintiff had tested negative for use of any illicit substances.[3] After receiving LSI's report, Texaco suspended plaintiff for violating the "Illegal/Unauthorized Substances and Materials Policy," and the process for terminating his employment from the company was begun.

However, before plaintiff was actually terminated, his father, E.J. Hodge, a former Texaco employee, contacted Texaco vice president Gerald Rome and asked Mr. Rome if he would look into the matter. Mr. Rome contacted another Texaco vice president, Paul Teague, who in turn contacted Al Hayes, Texaco's safety manager in New Orleans. Mr. Hayes instructed LSI to send a portion of plaintiff's remaining sample to Dr. Forest S. Tennant (Tennant) for a confirmatory test by his laboratory, Community Health Projects Medical Group (CHP). Both Tennant and CHP are also defendants in this action. LSI complied with Mr. Hayes' request and also sent Tennant/CHP a memorandum reporting its test results. Using the twenty nanograms per milliliter standard, the Tennant/CHP test was also positive for marijuana use. Thus, on December 5, 1988, Texaco terminated plaintiff.

Alleging that defendants LSI, CHP, and Tennant are consumer reporting agencies, and that Texaco is a user of consumer reports, Hodge brought suit against these defendants for various violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* Plaintiff's suit against ADS is predicated on the theory that ADS is the alter ego, successor in interest to, and principal of LSI by virtue of a "merger" which allegedly occurred on April 13, 1989. Thus, all claims raised against LSI are also raised against ADS. Plaintiff also brought numerous pendent claims under Louisiana law against these defendants.

Plaintiff's claims under the Fair Credit Reporting Act hinge entirely on the question of whether his urinalysis tests constitute consumer reports. 15 U.S.C. § 1681a(d)(A) excludes from the definition of a consumer report "any report containing information solely as to transactions or experiences between the consumer and the person making the report." Plaintiff has

---

**2.** Mobile is not a party in this suit.

**3.** Plaintiff contends that LSI's report indicated the presence of 133 nanograms per milliliter of "THC," the active agent in marijuana. Plaintiff contends therefore that the AML test was sensi-

tive enough to detect the presence of any THC in his system. However, and as we shall discuss in footnote 5 *infra,* this fact does not alter our analysis with regard to the precise question we will address in this motion.

contended throughout the course of this case that the urinalysis reports did not contain information culled from a transaction or experience between himself and the reporting laboratories because his urine sample was collected by Mobile instead of directly by those laboratories. We disagree with plaintiff's narrow interpretation of the transactions or experiences exception.

The transactions or experiences exception does not focus on purely physical contact. Rather, as the Federal Trade Commission explained, the critical inquiry is whether the party issuing the alleged consumer report has reported only those matters of which it has *first-hand knowledge.* Federal Trade Commission, Divisions of Consumer Credit and Special Programs, Bureau of Consumer Protection, *Compliance with the Fair Credit Reporting Act,* (rev. 2d ed. 1977) 5 CONS. CRED. GUIDE (CCH) ¶ 11, 304.[4] Thus, if a report contains solely information of which the reporter has personal, first-hand knowledge, it is not a consumer report subject to the provisions of the Fair Credit Reporting Act.

In this instance, the uncontroverted facts reveal that the urinalysis reports on plaintiff's urine[5] made by LSI and Tennant/CHP were based solely on information which those defendants derived on their own by virtue of the chemical analyses which they performed. In short, the reports made by LSI and Tennant/CHP dealt strictly with the chemical content of plaintiff's urine as contemplated by the transaction or experiences exception of 15 U.S.C. § 1681a(d)(A).[6] We hold therefore that LSI and Tennant/CHP did not issue consumer reports.[7]

Because we hold that LSI and Tennant/CHP did not issue consumer reports, we must dismiss plaintiff's claims under the Fair Credit Reporting Act. As there is no diversity jurisdiction available to plaintiff, our dismissal of these claims entirely deprives plaintiff of federal jurisdiction. Under the standard announced in *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139. Thus, we also dismiss plaintiff's pendent state law claims without decision so that they may be adjudicated by a state court of proper jurisdiction.

Accordingly, we *GRANT* in part the Motions for Summary Judgment filed by de-

---

4. Specifically, the FTC stated:

It is important to note that the exception to the definition of "consumer reports" ... is limited to "transactions and experiences" between the person contacted for information and the consumer of which that person has first hand knowledge. For example, if retailer A calls retailer B and asks for ledger experience with Mr. Smith, the reporting by retailer B of Mr. Smith's payment record with him would *not* be a consumer report. If, however, retailer B informs the inquirer that Mr. Smith ... has defaulted on his obligation to bank C, retailer B is making a consumer report, and all of the statutory obligations arising from the consumer report would apply to retailer B. Accordingly, creditors, employers, and others who regularly supply personal information on consumers to others must take care to limit that information to transactions and experiences of which they have first hand knowledge ... based on their own experience with the consumer involved.

5. Plaintiff disputes that his urine was the urine actually tested by LSI and reported thereon to Texaco. As support for this assertion, plaintiff offers the AML test which was negative. Plaintiff also asserts that neither LSI nor Tennant/CHP saw plaintiff void his urine sample and therefore cannot prove that their reports were based on plaintiff's urine. While these facts may support a finding that LSI and Tennant/CHP were negligent in conducting their tests or the chain of custody procedures, these facts, as plaintiff himself admits, do not alter the analysis with regard to the question of whether LSI or Tennant/CHP issued reports based on information of which they had first hand knowledge.

6. As regards LSI, further evidence of the direct transaction or experience with plaintiff is demonstrated by *plaintiff's signature* on the chain of custody form bearing the LSI logo, and by plaintiff's consent to cooperate with the urinalysis performed by LSI.

7. Notably, plaintiff has not claimed that the Dr. Lahasky/AML reports constitute consumer reports despite the fact that those transactions are identical in form to the transactions occurring with LSI and Tennant/CHP.

fendants ADS, LSI, Consolidated, and Texaco and *DISMISS WITH PREJUDICE* plaintiff's claims under the Fair Credit Reporting Act against those parties. Pursuant to Rule 12(b)(1), we also *GRANT* defendant ADS's Motion to Dismiss for lack of subject matter jurisdiction. Pursuant to Fed.R.Civ.P. 12(h)(3), we also *DISMISS WITH PREJUDICE* plaintiff's claims under the Fair Credit Reporting Act against defendants Tennant and CHP for lack of subject matter jurisdiction.[8] Further, we *DISMISS WITHOUT PREJUDICE* plaintiff's pendent state law claims.

DONE AND SIGNED at Alexandria, Louisiana this 29th day of May, 1991.

---

8. Fed.R.Civ.P. 12(h)(3) provides: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court *shall* dismiss the action." (Emphasis added).