IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-4559

_____

DAVID J. HODGE,

                                        Plaintiff-Appellant,

                        versus

TEXACO, INC., ET AL.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

(October 7, 1992)

Before REAVLEY, HIGGINBOTHAM, and DeMOSS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

      We deal with this case with the applicability of the Fair
Credit Reporting Act, 15 U.S.C. § 1681 et seq. to workplace drug
tests.  We find that the FCRA may apply to drug tests in some
circumstances, but that the tests in this case are excluded from
coverage under the "transactions and experiences" exclusion.  15
U.S.C. § 1681a(d).  Accordingly, we affirm the judgment of the
district court.

                              I.

      David Hodge was employed by Texaco as an oil field pumper.
Texaco tests its employees for drug use as part of evaluating its
employees' "fitness for duty."  Mobile Health Services ("MHS)
collected urine samples from Texaco employees at the employees' job

sites.  On November 1, 1988, MHS conducted an unannounced examination of employees at Hodge's jobsite.  After Hodge failed an initial screening test, involving the ability to track a moving point of light with his eyes, MHS required him to provide a urine sample.

The sample was sent to Laboratory Specialists, Inc. ("LSI"), a laboratory that performs urine testing for Texaco. LSI reported that the Hodge sample tested positive for tetrahydrocannabinol, evidence of marijuana use.  Upon receiving LSI's report, Texaco suspended Hodge without pay and began termination proceedings.

Hodge's father contacted Gerald Rome, a Texaco executive vice president, and asked him to investigate his son's pending termination.  At Rome's request, another Texaco executive instructed the New Orleans office to have LSI send a portion of Hodge's urine sample to Dr. Forest Tennant, MD., a drug rehabilitation counselor who worked with Texaco in developing its drug policies.  Dr. Tennant sent the sample to American Biotest Laboratory, Inc., and then reported to Texaco that the test was indeed positive.  Texaco terminated Hodge for violating Texaco's substance abuse policy.

Hodge filed this action against LSI and Tennant, contending that LSI and Tennant were "consumer reporting agencies" that violated the FCRA by failing to use reasonable procedures to guarantee maximum possible accuracy in their "consumer reports." Hodge also contended that Texaco violated the FCRA by failing to

2

disclose the name and address of the drug testing laboratories when it terminated him.

Hodge brought this action against Texaco U.S.A., Laboratory Specialists, Inc., Consolidated American Insurance Co., American Drug Screens, Inc., and Dr. Forest Tennant, alleging violations of the Fair Credit Reporting Act and pendent state-law claims.

The defendants filed a 12(b)(6) motion to dismiss, contending that FCRA did not apply to urinalysis reports. The district court denied the motion. Hodge and the defendants moved for summary judgment on the question of FCRA coverage. The court granted the defendants' motion, reasoning that the FCRA did not apply to the drug-screening reports in this case, because these reports were not "consumer reports" within the meaning of FCRA. Hodge v. Texaco U.S.A., 764 F. Supp. 424 (W.D. La. 1991). Hodge appeals from this order of summary judgment.

## II.

Hodge contends that urinalysis reports are "consumer reports" under FCRA, when they are used to determine whether an employee should be fired. Under the FCRA, "consumer reporting agencies" must follow certain procedures when releasing "consumer reports." A "consumer report" is defined as:

> any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used . . . for the purpose of serving as a factor in establishing the consumer's eligibility for . . . (2) employment purposes. . . . 15 U.S.C. § 1681a(d)

3

Workplace drug tests such as those performed by LSI and Tennant fall within the plain language of this statute. The reports of the results of these drug tests are communications bearing on Hodge's personal characteristics which were used to determine his eligibility for employment.

Defendants argue that despite the statute's plain language, urinalysis tests fall outside the general purposes of the FCRA, which is the evaluation of individuals' creditworthiness. By its own terms, however, FCRA applies not only to credit reports, but also to reports of consumers' employment eligibility. Comeau v. Brown & Williamson Tobacco Co., 915 F.2d 1264 (9th Cir. 1990). In Peller v. Retail Credit Co., 359 F. Supp. 1235 (N.D. Ga. 1973), the court found that lie detector tests revealing a plaintiffs' prior use of marijuana could be "consumer reports" if released to prospective employers by a retail credit company. The Federal Trade Commission, the agency charged with enforcing its provisions, has interpreted FCRA to apply to State Motor Vehicle Department records, employment agencies' reports, and even university career and placement offices' mailings of reference letters. We find no basis in the statutory language or the legislative history to conclude that medical-type reports were meant to be excluded from its coverage.

Admittedly, the extension of FCRA to drug-screening reports case seems far from the original purposes behind the Act. However, Congress has enacted this statutory language which covers a broad range of conduct by its very terms. We cannot depart from the

4

plain language of this statute on the basis that Congress must not have meant what it said. Accordingly, we conclude that workplace drug test reports are not categorically excluded from coverage under FCRA.

III.

Determining the general inclusion of drug tests within the definition of consumer reports does not end our inquiry into the applicability of the FCRA, because the statute also excludes some transactions from coverage. Defendants assert that the report from LSI to Texaco falls within the scope of § 1681a(d)(A) which excludes from coverage "any report containing information solely as to transactions or experiences between the consumer and the person making the report. . . ." We agree.

The "transactions and experiences" provision exempts from coverage any report based on the reporter's first-hand experience of the subject. Therefore, a retailing firm's disclosure of its own ledger experience with a customer, Porter v. Talbot Perkins Children's Services, 355 F. Supp. 174, 177 (S.D.N.Y. 1973)) (quoting F.T.C.'s consumer credit guide), or a bank's report of its own experience with its customers, Smith v. First National Bank, 837 F.2d 1575, 1579-80 (11th Cir. 1988), would not constitute a "consumer report." The F.T.C.'s interpretative regulations state that, as long as the report is not "based on information from an outside source," but rather is based solely on the reporter's own first-hand investigations of the subject, the report will fall

within the "transactions and experiences" exception. 16 C.F.R. Appendix, Part 600, at 344 (1991).

LSI asserts that its report consists of its first-hand experience in performing the tests on the urine sample, not on information gathered from outside sources. Hodge contends that LSI's urinalysis report does not fall within § 1681a(d)(A)'s exclusion of first-hand reports for two reasons. First, Hodge argues that, because LSI relied on MHS's initial collection and delivery of the urine sample, their analysis does not constitute a report of their own "first-hand experience." Second, Hodge argues that LSI cannot have had first-hand experience with Hodge within the meaning of FCRA, because it had no "trade experience" with Hodge as, for instance, Hodge's employer, insurer, or creditor. We reject both of Hodge's arguments and conclude that LSI's report to Texaco was based upon its transactions with Hodge within the meaning of the "transactions and experiences" exclusion.

Hodge's argument that LSI's experience with him was not "first-hand," because LSI did not itself collect the urine sample reads the "transactions and experiences" exclusion too narrowly. MHS's collection of the urine sample was a mechanical preliminary task. LSI did not rely on any information from MHS to produce its report that the urine sample labelled as Hodge's had tested positive for marijuana use. LSI merely reported the results of its scientific testing of the urine sample that Hodge provided them. Their report was based upon their experiences in testing the sample, not upon any outside information.

6

Of course, the accuracy of the reports will depend on whether LSI actually obtained Hodge's urine sample and not someone else's urine for their tests. This information was obtained, however, not from any independent experience by MHS, but from forms filled out and signed by Hodge himself. The mere transmittal of the forms and the urine through MHS's custody procedures does not change the basic nature of LSI's analysis any more than the use of the mails to receive information about a customer would break the chain of "first-hand experience."

Hodge's second argument asserts that, unless the reporter has a personal business transaction ("trade experience") with the subject of the report, then the report cannot fall within the "transactions and experiences" exception. This construction of § 1681a(d)(A) requires a strained reading of the statutory provisions and would lead to untenable results. See Peller v. Retail Credit Co., 359 F. Supp. 1235 (N.D. Ga. 1973). The "transactions and experiences" exception uses broad language in the same way as the rest of the definition of a consumer report does so. Neither one contains a limitation to trade experience. It would be incongruous to read such a limitation into the exclusion provision while reading the main part of the definition broadly enough to sweep in this kind of drug testing. Hodge cannot have it both ways. Thus, we conclude that LSI's report to Texaco was not a consumer report.

IV.

Tennant's report to Texaco presents a more difficult case than LSI, because Tennant's report contains some second-hand information.[1]   Tennant sent Hodge's urine specimen to American Biotest Laboratory for testing and reported ABL's test results along with his own test results.   Tennant was, therefore, not squarely governed by the exclusion under § 1681a(d)(A) which requires that excluded reports contain "solely" information about "transactions or experiences between the consumer and the person making the report."

It is difficult to determine from the record the district court's basis for dismissing the claim against Tennant sua sponte. We conclude, however, that dismissal of the claim against Tennant is appropriate for reasons not fully addressed below.   The record is completely devoid of evidence that Tennant meets the basic requirement for coverage under the FCRA that he be a "consumer reporting agency."   Because we conclude that Hodge cannot demonstrate the existence of this element of his FCRA claim, we affirm the dismissal of his claim.

The term "consumer reporting agency" is defined in the FCRA as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or

---

[1]We note that, although it does not change our analysis under the FCRA, it is somewhat ironic that Hodge seeks recovery under the FCRA on the basis of additional testing which was done only at the behest of Hodge's father, a long-time Texaco employee.

other information on consumers for the purpose of furnishing consumer reports."  15 U.S.C. § 1681a (emphasis added).  Dr. Tennant is a drug rehabilitation counselor who has worked with Texaco programs in various states.  The undisputed record evidence demonstrates that his involvement with Hodge's drug retesting was solely a one-time referral because he happened to be working with Texaco Louisiana at the time a retest was requested.  He was asked about a lab to use for the retest and recommended ABL.  Because of logistical problems, he acted as a go-between for Texaco and ABL.

Hodge has come forward with no evidence disputing this basic scenario and has not demonstrated that Tennant regularly engages in the collection of information about consumers.  The requirement that a consumer reporting agency engage regularly in the collection of information was obviously intended to protect individuals like Dr. Tennant who engage in activities that might fall within the definition of the FCRA on a casual, one-time basis.  Thus, we conclude that Hodge's claim against Tennant was properly dismissed. Although Tennant has not raised this argument in a motion for summary judgment, we grant judgment for Tennant nonetheless for the sake of judicial economy because it is clear that Hodge's claim cannot succeed.

The judgment of the district court is AFFIRMED.


**DeMoss, Circuit Judge, specially concurring:**

10

I **concur** in the **affirmance of the district court's judgment** solely for the reasons set forth in Parts III and IV of the panel opinion. These reasons seem completely sufficient and adequate for our decision and render unnecessary the conclusion in Part II of the panel opinion, with which I disagree.