Shane **SALAZAR**, Plaintiff,

v.

**GOLDEN STATE WARRIORS,**
Defendant.

No. C99–4825CRB.

United States District Court,
N.D. California.

Nov. 9, 2000.

---

Sheri L. Leonard, Henk, Bock, Leonard & Vega Inc., Sacramento, CA, for plaintiff.

John C. Corcoran, Thelen, Reid & Priest LLP, San Francisco, CA, for defendant.

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

BREYER, District Judge.

Now before the Court is the defendant's Motion for Partial Summary Judgment under Federal Rule of Civil Procedure 56(c). After carefully considering the papers submitted by the parties and having had the benefit of oral argument on October 27, 2000, the Court GRANTS the defendant's Motion for Partial Summary Judgment on the first cause of action, violation of the

Fair Credit Reporting Act, 15 U.S.C. § 1681.

## BACKGROUND

### A. *Undisputed Material Facts*

On September 21, 1999, the plaintiff Shane Salazar was summoned into the office of the General Manager for the defendant Golden State Warriors, and was terminated from his employment as the Warrior's equipment manager. The defendant terminated the plaintiff based upon its review of a videotape and report prepared by Noesis, a firm which specializes in performing private investigative services.

The defendant retained Noesis in order to learn whether rumors of the plaintiff's drug use were true. Noesis assigned two investigators who engaged in surveillance of the plaintiff: 1) outside his residence; 2) while driving his automobile; 3) around the Bay Area; and 4) in a parking lot on September 4, 1999. While in the parking lot, the investigators recorded on videotape the plaintiff engaging in activity which suggested the use of cocaine.

Noesis provided the defendant a videotape which consisted of the activities recorded on September 4, 1999, and a report which consisted of a summary of the surveillance performed by the investigators. The defendant did not disclose to the plaintiff the retaining of Noesis nor did it obtain the plaintiff's consent for Noesis' surveillance.

### B. *Procedural History*

The plaintiff's original complaint included seven causes of action: (1) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681; (2) invasion of privacy; (3) breach of the covenant of good faith and fair dealing; (4) defamation; (5) wrongful termination in violation of public policy; (6) intentional infliction of emotional distress; and (7) negligence. Upon motion of the defendant, the Court dismissed the second, third, fifth, sixth and seventh claims for failure to state a claim upon which relief may be granted.

Following the dismissal, the plaintiff amended his original complaint to add claims for (1) violation of the California Labor Code § 1194 by failing to pay overtime wages, and (2) violation of the Fair Labor Standards Act, 20 U.S.C. § 201 *et seq.*, by failing to pay overtime. The plaintiff and the defendant subsequently stipulated to the dismissal of the fourth cause of action (defamation). Accordingly, the following three causes of action remain: (1) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, (2) violation of the Fair Labor Standards Act, 20 U.S.C. § 201, *et seq.* and (3) violation of California's Labor Code § 1194 for failure to pay overtime wages. This motion concerns whether the videotape and report of plaintiff's activities are governed by the Fair Credit Reporting Act ("FCRA").

## DISCUSSION

The defendant moves for Partial Summary Judgment with respect to the first cause of action on the grounds that the FCRA does not apply as a matter of law to the videotape and report that Noesis submitted to the defendant because they fall within the "transactions or experiences" exception to the definition of a consumer report.

### I. *Standard of Review for Granting Summary Judgment*

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is

"material" if the fact may affect the outcome of the case. *See id.* at 248, 106 S.Ct. 2505. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the nonmoving party." *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *See id.* at 323, 106 S.Ct. 2548. Once the moving party meets this initial burden, the nonmoving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.

## II. *Fair Credit Reporting Act*

■ The FCRA requires consumer reporting agencies[1] to use reasonable procedures to guarantee maximum possible accuracy in their "consumer reports." It also requires disclosure of certain information. *See* 15 U.S.C. § 1681. While the majority of the cases that arise under this Act involve credit reports, "consumer reports" and their use for employment purposes are within the purpose of the Act as articulated by Congress. In particular, the Act defines consumer reports as follows:

(1) In general.—The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, **character, general reputation, personal characteristics, or mode of living** which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—(B) **employment purposes.**

15 U.S.C. § 1681a(d)(1)(B) (emphasis added). The Act further provides that "[t]he term 'employment purposes' when used in connection with a consumer report means a report used for the purpose of evaluating a consumer[2] for employment, promotion, reassignment or retention as an employee." 15 U.S.C. § 1681(h). However, the Act excludes from the definition of consumer reporting any "report containing information solely as to transactions or experiences between the consumer and the person making the report." 15 U.S.C. § 1681a(d)(2)(A)(i). The parties do not dispute that the videotape and report fall within the Act's general definition of "consumer report." What they do dispute is whether the videotape and report issued by Noesis are, nonetheless, outside the FCRA because they fall within the "transactions or experiences" exception.

### A. "Transactions or Experiences" Exception

■ The videotape and report Noesis submitted to the defendant fall within the "transactions or experiences" exception because, while they were created by a Credit Reporting Agency ("CRA"), they contain information "solely as to experiences between the consumer [the plaintiff] and the

---

**1.** The term "consumer reporting agency" means any person which for monetary fees regularly engages in whole or in part in the practice of assembling..information on consumers for the purpose of furnishing consumer reports to third parties. 15 U.S.C. § 1681.

**2.** The FCRA defines consumer as an individual.

person making the report [Noesis]." 15 U.S.C. § 1681a(d)(2)(A)(i). The videotape records what Noesis observed the plaintiff doing; that is, Noesis' experience with the plaintiff. The report records—in written form—the same or similar information. Accordingly, the videotape and report fall under the exception under a plain reading of the statute.

The seminal case on this issue, *Hodge v. Texaco*, 975 F.2d 1093 (5th Cir.1992), confirms that they fall under the exception. In *Hodge,* an employee argued that the employer violated the FCRA by not complying with the notice and disclosure provisions of the FCRA before terminating him because he failed a drug test. The employer had sent a urine sample from the employee to an outside lab for analysis, and the lab had returned the results to the employer. The issue before the court was whether the report made by the lab concerning the urinalyses fell within the exception.

The court determined that the exception exempted any report based on the reporter's first-hand experience of the subject, and likened it to how a retailing firm's disclosure of its own ledger experience with a customer would not constitute a "consumer report" because it involves solely a transaction or experience between the retailer and the customer. *Id.* at 1096. The court concluded the lab's urinalysis report was a "transaction or experience" between the reporter (the lab) and the consumer (the employee) because the report only included the lab's first-hand experience with the sample, with no reliance on information from a third-party. *Id.* at 1096.

The court's interpretation of the exception was based in part on the Federal Trade Commission ("FTC") interpretative regulations. *See Chevron U.S.A., Inc. v.*

*Natural Resources Defense Council,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (holding that courts should give deference to an executive agency's construction of a statute it is entrusted to administer). The FTC defines reports that are excluded from the definition of a consumer report as those that are not based on information from an outside source, but "rather [are] based solely on the reporter's own first-hand investigation of the subject." *Hodge,* 975 F.2d at 1096 (citing 16 C.F.R. Appendix, Part 600, at 344.) The FTC interpretations explain further that "information beyond their [the reporting agency] own transactions or experiences with the consumer," fall outside the exception. 16 C.F.R. Pt. 600, App. 7(2).

During oral argument the plaintiff argued that even if *Hodge* was correctly decided, it is too factually different from this case to be of relevance. The plaintiff argued that in both *Hodge* and *DiGianni* [3] the reports that fell within the exception were based on actual interactions between the consumer and the CRA creating the report. The plaintiff questioned whether an interaction could constitute a "transaction or experience" between the parties when one of the parties, such as the plaintiff in the interactions at issue here, is unaware of the interaction. The exception, however, does not require a mutual interaction. Instead, it requires that the reporter have "first-hand" knowledge of the information included in the report. Here, Noesis had first-hand knowledge of the information included in its report and videotape.

### B. Federal Trade Commission Opinion Letters

Both parties rely on FTC opinion letters to support their interpretations of

---

3. The single case that the plaintiff cites to establish that the videotape and report are consumer reports and do not fall within the exception is inapposite. In *DiGianni,* the court determined that when a department store furnishes information to a consumer reporting agency this information falls within the exclusion because the store is only relating its transactions and experiences with the consumer. *DiGianni v. Stern's,* 26 F.3d 346 (2nd Cir.1994). The case in no way suggests that Noesis' videotape and report were not based upon "first-hand" information.

the "transactions or experiences" exception. The plaintiff's analysis of the letters, however, assumes the *employer's* (the defendant's) "transactions or experiences" with the consumer (the plaintiff) are at issue. The FCRA, however, is directed at the "transactions or experiences" between the employee and the CRA, and not the "transactions or experiences" between the employee and employer. *See* 15 U.S.C. § 1681a(d)(1). Thus, the issue is whether Noesis' (the CRA) report to the "user" (the defendant) is a result of Noesis' first-hand experiences with the plaintiff.

In the *Hincle* Opinion Letter, dated July 9th, 1998, the FTC was asked if the "transactions and experiences" exception would apply to a CRA which is verifying prior employment. The FTC determined that the exception would apply to communications from the former employer to the CRA, but that the exception would not apply to communications from the CRA to the potential employer "because the experiences referred to in the communication are not between the job applicant and the CRA" and thus are second-hand. *See* Leonard Decl., Oct. 6, 2000, Ex, 2, at 10. This letter merely means that if the CRA receives first-hand information from a prior employer, the report from the prior employer to the CRA falls within the exception, while, the report from the CRA to the future employer based on that same information does not. Noesis, like the former employer in *Hinkle,* however, had first-hand knowledge of the information he conveyed to the defendant and thus the defendant was not required to comply with the FCRA.

In the *Styler* letter, the FTC addresses several questions pertaining to whether information provided by a private investigator constitutes consumer reports. *See* Leonard Decl., Oct. 6, 2000, Ex. 4, at 2. The examples presented in the letter are of situations when an investigator reports on information obtained through secondary sources, i.e., criminal and civil reports. The FTC concludes that these examples are considered consumer reports. However, this conclusion does not change the Court's analysis. The relevant question in this case is whether the report falls within the "transactions or experiences" exception and not whether the report is a consumer report.

The Noesis report and the Noesis videotape fall squarely within the FTC interpretative regulations. They are based solely on Noesis' first-hand experience with the plaintiff. While videotaping is an unusual form for consumer information, it is no less first-hand than accounts with a department store. Furthermore, the report issued to the defendant consists solely of "observations" which, too, are first-hand.

## C. Gathering Information Does Not Take the Report Outside the Exception

■ The plaintiff also argued during oral argument that the defendant used more than first-hand observations to produce the report and thus it does not fall within the exception. The plaintiff pointed to three examples of information that were indisputedly gathered by Noesis: (1) the listing of the registered owners of automobiles encountered by investigators; (2) the criminal background check that Noesis performed on the plaintiff; and (3) a printout from a public information data base regarding the plaintiff. None of the examples plaintiff identifies removes the report from the "transactions or experiences" exception. For example, the list of the registered owners of automobiles encountered by investigators constitutes second-hand information, but does not remove the report from the exception because the list did not include information pertaining to the plaintiff. The criminal background check and the public information print out also constitute second-hand information gathered by Noesis. However, neither the background check nor the public information print-out were provided to the defendants. Thus, Noesis' videotape and report

do not include second-hand information about plaintiff.

## III. Conclusion

The report summarizing the surveillance and the videotape of the surveillance that Noesis provided the defendant fall under the "transactions or experiences" exception because they are a first-hand account of the experience the investigators had with the plaintiff. Thus, when the defendant "used" the report for employment purposes it was not required to follow the FCRA. Accordingly, the defendant's Motion for Partial Summary Judgment is GRANTED.